

U.S. Department of Justice

*Leah B. Foley*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*      *John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

February 12, 2025

Scott Lauer, Esquire
Office of the Federal Public Defender
51 Sleeper Street, 5th Floor
Boston, MA 02210

      Re:    <u>United States v. Tania Fernandes Anderson</u>
            Criminal No. 24-CR-10364-IT

Dear Attorney Lauer:

      The United States Attorney for the District of Massachusetts (the "U.S. Attorney") and your client, Tania Fernandes Anderson (the "Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

      1.    <u>Change of Plea</u>

      As soon as is practicable, Defendant will plead guilty to count one of the Indictment charging wire fraud, aiding and abetting, in violation of 18 U.S.C. §§ 1343 and 2, and count six of the Indictment, charging theft concerning a program receiving federal funds, aiding and abetting, in violation of 18 U.S.C. §§ 666(a)(1)(A) and 2. Defendant admits that Defendant committed the crimes specified in these counts and is in fact guilty of each one.

      Upon the Court's acceptance of Defendant's plea and the terms of this plea agreement, the U.S. Attorney will dismiss counts two through five of the Indictment, charging wire fraud, aiding and abetting, in violation of 18 U.S.C. §§ 1343 and 2.

      The U.S. Attorney agrees not to charge Defendant with (a) wire fraud, in violation of 18 U.S.C. § 1343 arising from Defendant's misuse of her campaign account and (b) filing false and fraudulent tax returns, in violation of 26 U.S.C. § 7206(1), for tax years 2021, 2022 and 2023. This agreement is limited to facts known to the U.S. Attorney as of the date of this Plea Agreement.

      Defendant agrees to the accuracy of the attached statement of facts.

1

2.  Penalties

Defendant faces the following maximum penalties:

For wire fraud: incarceration for up to 20 years; supervised release for up to 3 years; a fine of up to $250,000 or twice the gross gain or loss from the offense, whichever is higher; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Indictment.

For theft concerning a program receiving federal funds: incarceration for up to 10 years, supervised release for up to 3 years, a fine of up to $250,000 or twice the gross gain or loss from the offense, whichever is higher; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Indictment.

Defendant understands that, if Defendant is not a United States citizen by birth, pleading guilty may affect Defendant's immigration status. Defendant agrees to plead guilty regardless of any potential immigration consequences, even if Defendant's plea results in being automatically removed from the United States.

3.  Sentencing Guidelines

The U.S. Attorney agrees based on the following calculations, that Defendant's total "offense level" under the Guidelines is 9:

   a) Defendant's base offense level is 7 because USSG §2B1.1(a) applies;

   b) Defendant's offense level is increased by 2 because the value of the improper benefit is more than $6,500, but less than $15,000 (USSG § 2B1.1(b)(1)(B));

   c) Defendant's offense level is increased by 2 because Defendant abused a position of trust (USSG § 3B1.3); and

   d) Defendant's offense level is decreased by 2 because Defendant has accepted responsibility for Defendant's crimes (USSG § 3E1.1).

The parties agree that, if (a) U.S. Probation determines that Defendant does not receive any criminal history points; and if (b) both U.S. Probation and the United States determine that Defendant otherwise meets the criteria in Guideline § 4C1.1, the United States will recommend that Defendant's offense level be reduced by two levels pursuant to § 4C1.1.

Defendant understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw Defendant's guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

Defendant also understands that the government will object to any reduction in Defendant's sentence based on acceptance of responsibility if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crimes to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

If, after signing this Agreement, Defendant's criminal history score or Criminal History Category is reduced, the U.S. Attorney reserves the right to seek an upward departure under the Guidelines.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4.   Sentence Recommendation

The U.S. Attorney agrees to recommend the following sentence to the Court:

a) incarceration for 12 months and 1 day;

b) a fine within the Guidelines sentencing range as calculated by the parties, unless the Court finds that Defendant is not able, and is not likely to become able, to pay a fine;

c) 36 months of supervised release;

d) a mandatory special assessment of $200, which Defendant must pay to the Clerk of the Court by the date of sentencing;

e) restitution of $13,000; and

f) forfeiture as set forth in Paragraph 6.

Defendant agrees that all criminal monetary penalties, including special assessment, restitution, forfeiture, and/or fine imposed shall be due and payable immediately, and further agrees that any Court-ordered repayment schedule does not preclude further enforcement or collection by the United States.

5.   Waiver of Appellate Rights and Challenges to Conviction or Sentence

Defendant has the right to challenge Defendant's conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case

3

and that Defendant's conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

    a) Defendant will not challenge Defendant's <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

    b) Defendant will not challenge Defendant's <u>sentence</u>, including any court orders related to forfeiture, restitution, fines or supervised release, on direct appeal or in any other proceeding, including in a separate civil lawsuit.

Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.</u>

Defendant is agreeing to give up these rights at least partly in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have Defendant's conviction or sentence overturned.

    6.    <u>Forfeiture</u>

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

    a) $13,000 in United States currency, to be entered in the form of an Order of Forfeiture (Money Judgment).

Defendant admits that $13,000 is subject to forfeiture on the grounds that it is equal to the amount of the proceeds Defendant derived from the offense.

Defendant acknowledges and agrees that the amount of the forfeiture money judgment represents proceeds the Defendant obtained (directly or indirectly), and/or facilitating property

4

and/or property involved in, the crimes to which Defendant is pleading guilty and that, due at least in part to the acts or omissions of Defendant, the proceeds or property have been transferred to, or deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly, Defendant agrees that the United States is entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the now missing directly forfeitable assets.

Defendant agrees to consent to the entry of an order of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

If the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

7.  Civil Liability

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

8.  Breach of Plea Agreement

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Attorney

the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials Defendant provided to the government during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

9. <u>Who is Bound by Plea Agreement</u>

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

10. <u>Modifications to Plea Agreement</u>

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

*   *   *

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney John T. Mulcahy.

Sincerely,

LEAH B. FOLEY
United States Attorney

By: _____
DUSTIN CHAO
Chief, Public Corruption & Special Prosecutions Unit


_____
JOHN T. MULCAHY
Assistant U.S. Attorney

ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crimes I am pleading guilty to, and the maximum penalties for those crimes. I have discussed the Sentencing Guidelines with my lawyer, and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me, and we have had enough time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offenses. I believe this Agreement is in my best interest.

_____
Tania Fernandes Anderson
Defendant
Date: 4/7/2025

I certify that Tania Fernandes Anderson has read this Agreement and that we have discussed what it means. I believe Tania Fernandes Anderson understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

_____
Scott Lauer
Attorney for Defendant
Date: 4/7/25

8

**Statement of Facts**
**United States v. Tania Fernandes Anderson, 24-CR-10364**

1. Tania Fernandes Anderson ("FERNANDES ANDERSON") was a member of the Boston City Council, representing District 7.

2. FERNANDES ANDERSON was first elected to a two-year term in office in or about November 2021 and won re-election in or about November 2023. FERNANDES ANDERSON's current term as Councilor ends in approximately January 2026.

3. As a Boston City Councilor, FERNANDES ANDERSON was an agent of the City of Boston. FERNANDES ANDERSON was thereby authorized to take official action on behalf of the City of Boston, such as proposing and voting on city ordinances, by-laws, orders, resolutions, legislation and other legislative matters affecting the City of Boston, including voting on the annual budget for the City of Boston.

4. FERNANDES ANDERSON was the Vice Chair of the City Council Committee of Post Audit: Government Accountability, Transparency, and Accessibility, and a member of the Government Operations Committee and Public Safety and Criminal Justice Committee, among others.

5. Each Boston City Councilor, including FERNANDES ANDERSON, was allotted a budget of several hundred thousand dollars to pay salaries and bonuses for staff, which included positions for Chief of Staff, Communications, Policy, and Constituent Services, among others. As a City Councilor, FERNANDES ANDERSON was authorized to hire and terminate staff, set salaries and bonuses, and assign work schedules and duties.

6. Salaries and bonuses for City Councilor Staff were determined via personnel orders that were introduced and passed by members of the Boston City Council.

7.      "Staff Member A" was a member of FERNANDES ANDERSON's City Councilor Staff from 2022 to 2023. Staff Member A was related to FERNANDES ANDERSON but was not an immediate family member.

8.      Staff Member A deposited their City of Boston salary and bonuses, and made cash withdrawals of funds at Santander Bank, which conducted deposit and withdrawal transactions through interstate wire communications.

9.      The City of Boston received over $10,000 of federal grant money in the calendar year 2023 from federal agencies that included the United States Department of Housing and Urban Development, among other federal agencies.

10.     In or about early May 2023, FERNANDES ANDERSON told Staff Member A that FERNANDES ANDERSON would give extra pay in the form of a large bonus to Staff Member A, but that Staff Member A would have to give a portion of the bonus back to FERNANDES ANDERSON. Staff Member A agreed to the arrangement with FERNANDES ANDERSON.

11.     In or about early May 2023, FERNANDES ANDERSON informed her staff that they would be receiving bonuses. During her announcement, however, FERNANDES ANDERSON falsely told her staff that Staff Member A would be getting a larger bonus because FERNANDES ANDERSON wanted to pay Staff Member A for their prior volunteer work. FERNANDES ANDERSON did not disclose the bonus kickback arrangement with Staff Member A.

12.     On May 3, 2023, FERNANDES ANDERSON sent an email to a City of Boston employee to process bonus payments for her City Councilor Staff. In the email, FERNANDES ANDERSON instructed the City of Boston employee to process a bonus payment of $13,000 to

Staff Member A. Staff Member A's bonus was more than twice as large as the total amount of all bonus payments to FERNANDES ANDERSON's other staff combined.

13. FERNANDES ANDERSON did not disclose the bonus kickback arrangement with Staff Member A to the City of Boston employee.

14. On May 7, 2023, FERNANDES ANDERSON caused a City Council personnel order to be issued that, effective May 13, 2023, the bi-weekly payroll of her staff, including Staff Member A, would be increased to an amount that included the bonus payments. The May 7, 2023 personnel order omitted the fact that Staff Member A would be paying a portion of their bonus back to FERNANDES ANDERSON.

15. On May 26, 2023, the City of Boston issued the bonus check to Staff Member A in an amount payable of approximately $10,204.13, which reflected the $13,000 bonus, plus weekly salary, minus taxes withheld (the "Bonus Check"). The Bonus Check was payable from a City of Boston account with Citizens Bank, which was a Rhode Island-based bank that processed check payment transactions via interstate wire communications.

16. On May 26, 2023, Staff Member A deposited the Bonus Check to their account at Santander Bank. Then, at FERNANDES ANDERSON's instructions, Staff Member A made separate cash withdrawals of the Bonus Check: (a) on May 31, 2023, Staff Member A withdrew $3,000 in cash; (b) on June 5, 2023, Staff Member A withdrew $3,000 in cash; and (c) on June 9, 2023, Staff Member A withdrew $4,000 in cash.

17. On June 9, 2023, Staff Member A withdrew the $4,000 in cash at approximately 3:38 p.m. Then, at FERNANDES ANDERSON's instructions, FERNANDES ANDERSON and Staff Member A arranged to meet at a bathroom at City Hall where Staff Member A would hand $7,000 in cash to FERNANDES ANDERSON.

18.    On June 9, 2023, at approximately 4:11 p.m., Staff Member A texted FERNANDES ANDERSON, "Bathroom" to let FERNANDES ANDERSON know that Staff Member A was waiting in the bathroom to hand the $7,000 in cash to FERNANDES ANDERSON. Within seconds, FERNANDES ANDERSON texted Staff Member A, "Ready" to confirm that FERNANDES ANDERSON was ready to accept the $7,000 cash kickback from Staff Member A. Shortly following these texts, Staff Member A handed FERNANDES ANDERSON $7,000 in cash at a bathroom in City Hall.

19.    In 2022 and 2023, FERNANDES ANDERSON used funds from her campaign account for her own personal enrichment, and not for campaign-related expenses.

20.    For tax years 2021, 2022 and 2023, FERNANDES ANDERSON filed federal income tax returns with the IRS. FERNANDES ANDERSON omitted approximately $11,000 in income that she earned from a Massachusetts-based corporation from her 2021 tax return. FERNANDES ANDERSON willfully omitted campaign funds that she used for her own personal enrichment from her 2022 and 2023 tax returns. FERNANDES ANDERSON willfully omitted the $7,000 kickback that she received from Staff Member A from her 2023 tax return.